THE GALENA AND CHICAGO UNION RAILROAD COMPANY, Plaintiff in Error, *v.* DANIEL W. APPLEBY, Defendant in Error.

ERROR TO OGLE.

In penal actions, at the suit of a common informer, the omission to conclude with an *ad damnum* may be corrected, after error brought.

An act which exempts a railroad corporation from the duty of ringing a bell, or blowing a whistle, as required by the thirty-eighth section of the general railway act of 1849, may be repealed by another act, in amendment of the charter of the company so exempted, and rejected by such company, so as to render the company liable, for a breach of such duty.

THIS was an action of debt, commenced in the Circuit Court of Stephenson county, by one Daniel W. Appleby, against the Galena and Chicago Union Railroad Company, to recover certain alleged penalties which said company incurred under the statute, for not blowing a steam whistle or ringing a bell, in the neighborhood of a public highway. The venue was afterwards changed to Ogle county.

The first count of the declaration is, in substance, as follows : Daniel W. Appleby, by William Brown, State's Attorney of the Fourteenth Judicial Circuit of the State of Illinois, who sues as well for the People of the State of Illinois as for himself, in this behalf, complains of the Galena and Chicago Union Railroad Company, being summoned, etc., of a plea that they, the said defendants, render to the People of the State of Illinois, and to the said Daniel W. Appleby, the sum of one thousand dollars, that the said defendants owe and unjustly detain from them. Avers that defendants, on the 24th of July, A. D. 1855, were the owners of said railroad, situate in part in said county, over which road at said time defendants propelled engines and cars ; that said railroad crossed a public highway in said county ; that, on the day and year aforesaid, the said defendants propelled an engine across said highway without blowing a steam whistle or ringing a bell of thirty pounds weight at the distance of eighty rods from the place where the said railroad crossed the said public highway, and while crossing the said highway, contrary to the statute, whereby an action hath accrued, etc.

There are eleven other counts of the declaration, each for a separate penalty ; all substantially the same as the first count.

The conclusion of the declaration is as follows : " Yet the said Galena and Chicago Union Railroad Company (although often requested) have not paid to the People of the State of Illinois and to the said Daniel W. Appleby, who sues, as

aforesaid, or either of them, the said one thousand dollars above demanded, or any part thereof; but to pay the same to them, or either of them, the said Galena and Chicago Union Railroad Company have wholly refused, and still do refuse, and, therefore, as well for the People of the State of Illinois as for himself, the said Daniel W. Appleby brings his suit."

The defendant filed two pleas : 1st, that the defendant is exempted from the operation of the statute upon which the action is based, because the 38th section of the general statute of the railway act was repealed as far as it applied to the Galena and Chicago Union Railroad Company, which act was passed February 24, 1854.

The second plea sets out and avers that the action of the plaintiff is brought and founded upon a supposed amendment of the defendant's charter, which was passed February 16, 1855, stating the title of said act, and setting forth that the act repealing the 38th section of the general railway act, so far as it applied to the defendant, was repealed ; and then states that a special section was enacted applying specially to the said Galena and Chicago Union Railroad Company, requiring it to carry a bell of thirty pounds, etc., and then states that this pretended amendment to the charter of the defendant was rejected by the defendant by a formal vote, which resolution of the defendant is set out in the words used by the defendant.

To these pleas a general demurrer was interposed, which was sustained by the court, and defendant electing to stand by its demurrer, a judgment for $600 was entered against defendant.

The errors assigned are as follows :

That the declaration of record, and the matters and things therein contained, are not sufficient in law for the said defendant in error to maintain the aforesaid action.

The declaration, and matters and things therein contained, are insufficient for the defendant in error, Appleby, to maintain the aforesaid action.

Daniel W. Appleby was improperly joined in the aforesaid

action with the State of Illinois, and had no right to prosecute the aforesaid action jointly with the State of Illinois, or *qui tam* in his own name and in behalf of the said State of Illinois.

The court erred in rendering a judgment in favor of the defendants in error, Daniel W. Appleby, and the State of Illinois.

The court erred in sustaining the demurrer to the pleas of plaintiff in error.

The judgment should have been for the plaintiff in error, the Galena and Chicago Union Railroad Company, and not for the defendant in error.

E. ANTHONY, for Plaintiff in Error.

Cited the following acts of the General Assembly :

On the 25th of February, 1854, (see laws of 1854, p. 165,) an act was passed, entitled " An act to amend an act entitled ' An act to incorporate the Galena and Chicago Union Railroad Company,' " approved January 16, 1836 ; the third section of which is as follows :

" SEC. 3. It is hereby declared and enacted that the thirty-eighth section of an act entitled ' An act to provide for a general system of railroad corporations,' approved November 5th, 1849, does not, and shall not, extend to or control the charter or franchises of the said act, hereby amended."

" AN ACT to amend an Act, entitled ' An Act to amend an Act entitled ' An Act to incorporate the Galena and Chicago Union Railroad Company.' " Approved February 25th, 1854.

" SEC. 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That section third of the act to which this act is an amendment, be, and the same is, hereby repealed.

" SEC. 2. A bell of at least thirty pounds weight, or a steam whistle, shall be placed on each locomotive engine run by said company, and shall be rung or whistled at the distance of at least eighty rods from the place where the said road shall cross any other road or street, and be kept ringing or whistling until it shall have crossed said road or street, under

a penalty of fifty dollars for every neglect, to be paid by said corporation, one-half thereof to go to the informer, and the other half to the State; and also to be liable for all damages which shall be sustained by any person by reason of such neglect."

Also the following proceedings:

At a meeting of the board of directors of the Galena and Chicago Union Railroad Company, held at the office of said company in Chicago, on the 6th day of March, A. D. 1855, the foregoing act was read; whereupon, on motion, it was

"*Resolved,* That the said Galena and Chicago Union Railroad Company does hereby absolutely, to all intents and purposes, refuse to accept, accede to, or recognize the said act, and will not be governed or controlled thereby."

Also the following authorities: Gould's Pl., p. 55, sec. 16; Stephens on Pl. 347; Saunders on Pleading and Evidence, 523; 10 Mass. 39; 16 Ala. 14; 3 Robinson's Practice, 616; 6 Iredell, 354; 17 Johns. 455; 4 ib. 193; 8 ib. 218—342; 1 Chit. Pl. 358; 2 East, 353; 6 Cowen, 290; 7 Cowen, 496; 13 Johns. 253, 428; McClelland and Young, 454; Sedgwick on Statutory and Constitutional Law, p. 112; 1 Chit. Pl. 163; *Carle* v. *People,* 12 Ill. 286; 29 Barbour, 241; 3 Bos. & Pul. 382; 8 Texas, 255; 11 Ill. 331; 2 East, 353; 22 Conn. 288; 35 Maine, 429; 11 Mass. 273; 7 Mass. 9; Hardin, 95; 24 Ill. 196.

Sweet & Crain, for Defendants in Error, made the following points:

The repeal of the third section of the act approved February 25th, 1854, entitled "An act to amend an act entitled 'An act to incorporate the Galena and Chicago Union Railroad Company,'" approved January 16th, 1836, was a competent exercise of police power. 13 Ill. 551; 22 Ill. 269; 24 Barb. S. C. 240; 28 Vt. 140; 2 Zab. 523; 32 N. H. 215.

The repeal then of third section, above mentioned, remitted plaintiff in error to liability for violation of 38th section of general railway act, approved 5th November, 1849.

Defects, if any existed in declaration, are aided by bar. I Chit. Pl. 671; 9 Pick. 62; 1 Gilm. 372; 10 Wheat. 283.

Daniel W. Appleby *qui tam* is properly plaintiff. 4 Scam. 165.

Declaration in penal actions properly conclude without *ad damnum*. 1 Chit. Pl. 471; 4 Burr, 2021.

WALKER, J. This was an action of debt instituted, in the court below, to recover a number of penalties, for a failure to sound a whistle, or ring a bell, at a public road-crossing. The defense relied upon was presented by two pleas. By the first of these, it is averred, that the company is exempt from the operation of the statute under which this proceeding is instituted, because the thirty-eighth section of the general railway act was repealed so far as it related to this corporation, by the act of the 24th of February, 1854. The second plea avers, that the action is founded upon a supposed amendment of the defendant's charter, which was passed in February, 1855, repealing the act of 1854, and requiring the company to ring a bell or sound a whistle, and that this amendment was rejected by the company. To these pleas, a general demurrer was interposed, which the court sustained, and thereupon rendered a judgment for plaintiff for $600 and costs, to reverse which this writ of error is prosecuted.

It is insisted that the court below should have sustained the demurrer to the plaintiff's declaration. The objection taken to it is, that there are no damages laid in the conclusion. The rule is stated in Chitty's Pleadings, vol. 1, p. 451, to be, that " In penal actions at the suit of a common informer, as the plaintiff's right to the penalty did not accrue till the bringing of the action, and he cannot have sustained any damage by a previous detention of the penalty, it is not proper to conclude *ad damnum*, but the mistake may be amended even after error brought." This conclusion, so far from being improper, was technically right.

The main question in the case is, however, whether the legislature has the power, after releasing the company from the duties imposed by the thirty-eighth section of the general railway law, by special enactment, to again impose the same requirements upon the corporation. The second section of the act of 1855, requires the company to provide a bell of at

least thirty pounds weight, or a steam whistle, to be placed on each of their locomotive engines, and to be rung or whistled, at the distance of at least eighty rods from the road-crossing, and to be kept ringing or whistling until it shall have crossed the road or. street, under a penalty of fifty dollars for each neglect. Priv. Laws 1855, p. 284. This provision is substantially the same as that contained in the thirty-eighth section of the general railroad law. The first section of the act of 1855 repealed the act of 1854, exempting the company from the requirements of the general law.

It is urged that when the General Assembly released this company from the requirements of the general law, they became invested with such a right that they could not be deprived of except by their assent. That such exemption became a portion of their franchises, which the legislature could not resume. In the case of this company against Dill, 22 Ill. 264, it was held, that the act of 1854, exempting this company from this requirement, was constitutional. In that case, it was held, that this was a police regulation for the safety of the public, and that its exercise is entirely within the discretion of the General Assembly. That they have the power to impose such regulations, upon the various modes of travel, or upon any portion of them—upon all of a particular class, or upon a single individual of the class. Again, in the case of the *Ohio and Mississippi R. R. Co.* v. *McClelland,* 25 Ill. 140, the question was presented whether the General Assembly might require railroads already constructed and in operation, to fence their tracks, although there was no such requirement imposed by the charter. It was there held, that it was a police regulation, and that the legislature might impose the duty. That the right to adopt such police regulalations, for the safety of the people, is a fundamental principle lying at the very foundation of government itself, and may be exercised by the legislature, upon individuals and corporations alike.

That when these bodies accept their charters, it is upon the implied condition that they are to exercise their franchises subject to the power of the State to impose such regulations

as the safety of the public may require. It was held, in these cases, that when the safety of persons or property may require it, the legislature may demand the exercise of their franchises in such a mode as to afford the necessary protection. It can never be inferred that the legislature have irrevocably granted the right to exercise a franchise in such a mode as to endanger the life of the citizen. Even if they possess such power, nothing short of its grant by language so clear and unmistakable that it could have no other reasonable construction, could be held to give the enactment such an operation. It is one of the highest duties for which government is organized, to afford protection to the life and property of the governed. To license persons or artificial bodies to pursue occupations highly hazardous to the life of the citizen, or an occupation not necessarily so, in such a mode as to render it hazardous, would contravene one of the great purposes of the social compact. It would be a perversion of its powers, and contrary to the end of its creation.

All that can be inferred from the legislation in reference to this road is, that the General Assembly, when it exempted the company from the operation of the general law, believed that the safety of persons along its line did not at that time require it to be subject to the requirements of the general enactment. But when the act of 1855 was adopted, the change of circumstances was such as to demand their adoption. Whether they, in the exercise of their discretion, were properly informed of the public necessity for such protection, is not a question that can be investigated, as the General Assembly is the sole judge of its propriety and the extent to which it shall be imposed. It is true, that if the requirements imposed were so unanswerable as to render the franchises of the body useless, it would operate as a virtual repeal of the charter, and would necessarily be in violation of their vested rights, and be inoperative and void. But until the operation of the enactment reaches a point which impairs their chartered rights and privileges, the question is one for legislation, and not judicial determination.

In this case, the duties imposed by the act are reasonable

and just, and by no means operate to deprive the company of any vested right. They received their charter and were exempted from the operation of the general railroad law, subject to this power of police regulation, and as the safety of the public required the enactment, and the General Assembly have imposed the duty, the company must conform, or respond to the liability to the penalty for an omission of the duty. Nor is it an objection to the binding force of the act, that the corporation rejected the law as an amendment to their charter. The subject-matter was fully within the scope of legislative power, and although the title of the act is an amendment of their charter, the title does not change the effect of the law. It is the legislative intention which governs, and from the scope of the act it is manifest, that it was the design to impose this duty without reference to the assent of the body. These pleas, therefore, presented no defense to a recovery, and the demurrer was properly sustained. The judgment of the court below is affirmed.

*Judgment affirmed.*