(No. 16040.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALBERT BURKE, Plaintiff in Error.

*Opinion filed October 28, 1924.*

1. STATUTES—*unless clearly repugnant one act will not be construed to repeal another by implication.* Repeal of laws by implication is not favored, and it is only when there is a clear repugnance between two laws and the provisions of both cannot be carried into effect that the later law must prevail and the former be considered as repealed, or when in the later statute some express notice is taken of the former plainly indicating an intention to repeal it.

2. CRIMINAL LAW—*the amendment of 1921 making petit larceny from person a felony does not repeal provision as to second offense of petit larceny.* The amendment of 1921 to the Criminal Code, (Smith's Stat. 1923, chap. 38, par. 389,) providing for imprisonment in the penitentiary in cases of petit larceny where the property is stolen from the person, does not repeal, either in express terms or by implication, paragraph 393 of the Criminal Code, which provides a penitentiary punishment for a second conviction of the offense of petit larceny by anyone over the age of eighteen years.

3. SAME—*when witness should not be permitted to testify as to accounts.* In a prosecution for larceny of money from a telephone box, an employee of the telephone company who had nothing to do with keeping the books, accounts or toll tickets should not be permitted to testify as to the amount of money represented by the toll tickets for the box at the time of the alleged theft, where there is no evidence as to who made out the tickets or as to their accuracy.

4. SAME—*evidence tending to show defendant's preparation for committing alleged crime is competent.* In a prosecution for larceny of money from a telephone box, evidence of the finding of certain keys and locks which the defendant admitted were his and which tend to show preparation for the commission of the crime is competent.

5. SAME—*commission of crime charged must be proved beyond reasonable doubt.* The guilt of a person accused of crime must be proved by evidence establishing beyond a reasonable doubt every material element of the crime alleged in the indictment.

6. SAME—*what evidence is not sufficient to prove alleged ownership of stolen property.* In a prosecution for larceny of money from a telephone box, the allegation of the indictment that the

money was the property of the Illinois Bell Telephone Company, a corporation, is not proved by statements of witnesses that the telephone or box from which the money was taken was a telephone of the "telephone company," without naming the corporation.

FARMER, J., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. TIMOTHY D. HURLEY, Judge, presiding.

OTTO BAER, (J. M. GWIN, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and VIRGIL L. BLANDING, (HENRY T. CHACE, JR., EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiff in error, Albert Burke, was indicted, tried and convicted in the criminal court of Cook county, Illinois, under an indictment charging him with the larceny of six dollars, the property of the Illinois Bell Telephone Company. The indictment set forth in apt words a former conviction of plaintiff in error of the offense of petty larceny, and the verdict of the jury found that such former conviction and judgment were had. He was sentenced to the penitentiary, and the record is brought here by writ of error.

It is contended by plaintiff in error that since the amendment of the Criminal Code in 1921, by which larceny from the person in any amount is made punishable by imprisonment in the penitentiary, the distinction between grand and petty larceny has been abolished, and that a conviction cannot be sustained for a second offense of what is commonly called petty larceny.

At common law petty larceny was the stealing of goods of the value of twelve pence or under. Under the statute of this State passed in 1827 there was no distinction be-

313—37

tween grand and petty larceny. The law recognized but
one offense. In 1833 larceny was made punishable by im-
prisonment in the penitentiary for a term of years from
one to ten, and it was provided that if the value of the
property stolen was less than $5 the punishment should be
a fine not to exceed $100 and imprisonment in the county
jail not exceeding six months. In 1867 the value of the
stolen property requiring confinement in the penitentiary
was raised to $25, but at the special session in 1867 it was
reduced to $15, and so continued until 1921, when the stat-
ute in regard to the punishment for larceny was amended
so as to read as follows: "Every person convicted of lar-
ceny if the property stolen exceeds the value of $15, or if
the property is stolen from the person of another, shall be
imprisoned in the penitentiary not less than one nor more
than ten years; if the property stolen has not been stolen
from the person of another and is of the value of $15, or
less, the person convicted shall be confined in the county
jail, or sentenced to labor in the workhouse of the county,
city or town, where the conviction is had, or on the streets
or alleys of the city, or on the public roads in the county,
or to such labor under the direction of the sheriff as the
county board may provide for, not exceeding one year, and
fined not exceeding $100." (Smith's Stat. 1923, chap. 38,
par. 389.) In none of these statutes are the terms "grand
larceny" and "petty larceny" specifically defined, but since
1833 the courts and the legislature have recognized those
terms as having relation to the different grades of punish-
ment for the crime of larceny, the term "petty larceny" be-
ing used to designate that grade of larceny which subjects
the offender to punishment otherwise than in the peniten-
tiary, the sole basis of the distinction being the value of
the property stolen.

By the amendment of 1921 paragraph 393 of the Crimi-
nal Code, which provided a penitentiary punishment for a
second conviction of the offense of petty larceny by any

person over the age of eighteen years, was not expressly repealed and still remains in force unless repealed by implication.   Repeal of laws by implication is not favored, and it is only when there is a clear repugnance between two laws and the provisions of both cannot be carried into effect that the later law must prevail and the former is considered as repealed by implication.   (*Dingman* v. *People,* 51 Ill. 277; *Devine* v. *Board of Commissioners,* 84 id. 590; *Pavey* v. *Utter,* 132 id. 489; *People* v. *Faherty,* 306 id. 119.)   Where two statutes are enacted which have relation to the same subject, the earliest continues in force unless the two are clearly inconsistent with and repugnant to each other, or unless in the latest statute some express notice is taken of the former plainly indicating an intention to repeal it.   And where two acts are seemingly repugnant, they should, if possible, be so construed that the later may not operate as a repeal of the former by implication.   (*Town of Ottawa* v. *County of LaSalle,* 12 Ill. 339.) There is no repugnancy between the amendment of 1921 and paragraph 393 of the Criminal Code.   The amendment of 1921 simply provided a change of punishment for those specific cases of petty larceny where the property is stolen from the person of another, and did not repeal, either in express terms or by implication, paragraph 393.

It is contended by plaintiff in error that there is no proof in the record that any property was stolen nor any proof of the ownership of the property claimed to have been stolen.   From the evidence it appears that Frederick Biesswanger, a justice of the peace residing at Niles, Cook county, Illinois, conducted a grocery store, in the rear of which was a small room used by him as a court room, the two rooms being connected by a doorway.   On the night of October 7, 1922, between six and seven o'clock, plaintiff in error and a man by the name of Murray came to this doorway and asked to use the telephone.   A telephone was located in the store.   It was a long distance pay telephone,

having slots into which persons using the telephone inserted money for use of the telephone, which money remained in the box until the box was unlocked and the money taken out by a collector for the telephone company. These men went to the telephone, one of them took the receiver off the hook and they stood there for about fifteen minutes. Fred Curber, a witness for the State, testified that he saw Murray shove the money box back into the telephone and that he heard some money rattling in Murray's pockets. He did not see either Murray or plaintiff in error take any money from the telephone box. He thereupon took the two men back to the court room, searched them, and out of Murray's pocket took five or six dollars in nickels, dimes and quarters and a bunch of small keys. There was an automobile, which Murray claimed, standing in front of the place. In it were found caps and a flash-light. At a subsequent arrest of plaintiff in error skeleton keys and telephone boxes were found in his possession, and a search of his house revealed that there were duplicate telephone box keys and telephone box locks, which plaintiff in error admitted were his property. The evidence shows that the box in question had been opened by the company's collector about two weeks previous to October 7, 1922, but there is no evidence in the record that any person had used the telephone or dropped any money in the box between that time and the morning of October 8, 1922, when the box was opened by a representative of the company and only a dime was found therein, which dime Mrs. Biesswanger testified that she dropped after plaintiff in error and Murray had been at the box. There is no competent evidence in the record that at the time of the alleged larceny there was any money in the box, and there is no evidence in the record that this telephone or telephone box belonged to the Illinois Bell Telephone Company, the witnesses simply speaking of the telephone as a telephone of the "telephone company."

Fred W. Brown, a witness for the State, testified that he was employed by the Illinois Bell Telephone Company and the Chicago Telephone Company, and that he had made search for the toll tickets of the box at Niles in the office of Judge Biesswanger and tried to ascertain the whereabouts of the toll tickets; that he went to the chief clerk of the Illinois Bell Telephone Company and had a conversation with him with reference to the toll tickets; that the chief clerk went down to the commercial department, and that he and the commercial agent looked up the records and found that they had been destroyed six months after the date; that to the best of his information, by checking the toll tickets with the commercial agent two or three days after the robbery there were $5.25 worth of toll tickets for the box in question at the time of the alleged commission of the offense. Counsel for the defendant moved to strike out all this testimony, which motion was refused by the court, and the action of the court in that respect is assigned as error. The witness had nothing to do with keeping the books, accounts or toll tickets in question. There is no evidence as to who made out the tickets or as to their accuracy. The evidence was incompetent and should have been stricken out.

Charles E. Egan, a witness for the State, testified to finding certain keys which were duplicates of telephone box keys used by collectors of the telephone company, and certain locks which were locks belonging to the coin boxes of the Illinois Bell Telephone Company, in a room occupied by plaintiff in error, and that plaintiff in error admitted that these locks and keys were his. It is claimed that the admission of this evidence was error. This evidence had a tendency to show that plaintiff in error had made preparations for the perpetration of the larceny of money from a telephone box. Any testimony that tends directly to show the defendant guilty of the crime charged is competent. The test of admissibility is the connection of the facts

proved with the offense charged. (*People* v. *Jennings*, 252 Ill. 534; *People* v. *McGuirk*, 312 id. 257.) The court did not err in admitting this evidence.

It was incumbent upon the People in this case to prove the *corpus delicti* beyond a reasonable doubt. The guilt of a person accused of crime cannot rest upon guess, surmise or speculation but must be proven by evidence establishing beyond a reasonable doubt every material element of the crime alleged in the indictment. The indictment in this case alleged the stealing of money and alleged that such money was the property of the Illinois Bell Telephone Company, a corporation. The evidence in the case entirely fails to establish either one of these material elements.

The judgment of the criminal court must therefore be reversed and the cause remanded.

*Reversed and remanded.*

Mr. JUSTICE FARMER, dissenting.